**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**BENTON DIVISION**

TIMOTHY PORTER,                              )
                                             )
      **Plaintiff,**                        )
                                             )    **Case No.  3:24-cv-1706**
vs.                                          )
                                             )
SOUTHERN ILLINOIS HEALTHCARE                 )
ENTERPRISES, INC.,                           )    **Jury Demanded**
                                             )
      **Defendant.**                        )

## COMPLAINT

COMES NOW the Plaintiff, Timothy Porter, by and through his undersigned counsel, and for his Complaint, states as follows:

## NATURE OF THE COMPLAINT

1.      This is a civil action arising under the laws of the United States and is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*.

## THE PARTIES

2.      Plaintiff Timothy Porter is a thirty-nine-year-old resident of Carbondale, Jackson County, Illinois, who was, at all relevant times, an employee of Defendant Southern Illinois Healthcare Enterprises, Inc.

3.      Defendant Southern Illinois Healthcare Enterprises, Inc. is an Illinois corporation with its principal office at 1239 East Main Street, Carbondale, IL  62902.  Its registered agent for service of process is John R. Daly, who may be served at 1239 East Main Street, Carbondale, IL 62901.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over Mr. Porter's claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, because they raise federal questions pursuant to 29 U.S.C § 1331.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts giving rise to this lawsuit occurred in this judicial district and Defendant conducts business and employed Mr. Porter in Jackson County, Illinois, which is located within this judicial district.

6. Mr. Porter filed a timely charge of discrimination with the Equal Employment Opportunity Commission with respect to his Title VII claims, a copy of which is attached hereto as Exhibit A. Mr. Porter received a Notice of Right to Sue from the EEOC with respect to his Title VII claims fewer than ninety days prior to the filing of this Complaint, a copy of which is attached hereto as Exhibit B.

**FACTUAL BACKGROUND**

7. Defendant operates hospital facilities in Carbondale and other locations in southern Illinois.

8. Mr. Porter is bi-racial with both White and Black ancestry, but he appears to be Black.

9. Defendant hired Mr. Porter in or about 2009 to an entry-level position.

10. Mr. Porter performed his job well and received multiple promotions until, on January 23, 2023, he became the System Supply Chain Manager.

11. Mr. Porter performed a wide-range of duties as System Supply Chain Manager, including making sure the warehouse was up to date; hiring, evaluating, and firing employees;

ensuring supplies were coming in and going out as intended; overseeing patient record retention and disposal; transporting items throughout the system; working with the purchasing manager to develop policies; reviewing vendor contracts; and reviewing the Group Purchasing Organization to consider switching vendors.

12.    The System Supply Chain Manager position came with a raise above Mr. Porter's previous wage, but Defendant did not provide him with that raise and, instead, delayed the effective date of Mr. Porter's new job title until a date on which Defendant provided system-wide wage increases that Mr. Porter would have received even if he had not been promoted.

13.    Mr. Porter discussed the issue with Defendant, which acknowledged the issue, but never added the job-change raise to his salary.

14.    Only one percent of Defendant's director-level employees are members of a minority group.

15.    Accordingly, when the position of System Supply Chain Director came open in February 2023, Mr. Porter applied for job.

16.    Mr. Porter did not have a Bachelor's Degree at the time of his application, but he was enrolled to obtain the degree, which met the job requirement pursuant to Defendant's policy.

17.    As such, Defendant selected Mr. Porter as one of the three candidates to go through the peer-review hiring process, which resulted in multiple interviews with hiring personnel.

18.    While his application for Director was pending, Mr. Porter continued doing his work as System Supply Chain Manager and, in that capacity, he asked for assistance from Human Resources in August 2023 to address an employee who had been insubordinate by changing a process that had system-wide effects without consulting Mr. Porter.

19.     Mr. Porter's request resulted in a couple of meetings to address the employee's actions, after which all agreed that the issues had been resolved.

20.     Soon after that resolution, however, an anonymous employee reported that Mr. Porter had addressed that same insubordinate employee inappropriately.

21.     Just after those events, on August 30, 2023, Defendant notified Mr. Porter that it would not hire him for the System Supply Chain Director position.

22.     Defendant, instead, hired a White woman for the job even though she had no experience managing the supply chain operation.

23.     Defendant had given the White woman additional interview opportunities to enable her to provide correct answers to substantive questions about performing the job.

24.     On October 26, 2023, the new Director pulled Mr. Porter into the office and accused him of telling a warehouse supervisor that "he better watch out or [his girlfriend] might start wanting dark meat."

25.     Mr. Porter honestly denied making any such statement, but Defendant suspended him, including prohibiting him from accessing his email or any buildings or receiving any work-related phone calls.

26.     Defendant then claimed to have verified that Mr. Porter made the statement and issued him a final written warning for that issue while also counseling him about the previous issue with the insubordinate employee from August 2023.

27.     Mr. Porter asked why he was being treated in that manner over a hearsay statement that he had not made when he had no prior discipline on his record, but, on October 30, 2023, Defendant gave Mr. Porter a level-three written warning, a six-month performance improvement

4

plan, removed all of his direct reports, and limited him to working only on special projects from a makeshift office in the warehouse instead of in his office in the main office building.

28.     Mr. Porter sought to make the best of the situation by performing whatever work he was allowed to do, but Defendant continued to change its treatment of him.

29.     Between October and December 2023, Mr. Porter was chastised for being late to a meeting for which he had been on time; the new Director ignored the preparatory materials Mr. Porter had submitted for a meeting and ignored the issue he raised until a White colleague raised it; and he was cut out of meetings in which he had previously been involved, such as the Group Purchasing Organization vendor-change issue.

30.     Mr. Porter submitted a letter of concern regarding racial discrimination on February 6, 2024, but Defendant never addressed it.

31.     Mr. Porter tried to meet with both the CFO and the Director about his racial mistreatment.

32.     The CFO scheduled multiple meetings with Mr. Porter, but he cancelled all except one that he delayed for months.

33.     The Director said she assumed Mr. Porter would not want to meet with her because she had been promoted over him, even though Mr. Porter had asked her when she got the promotion how he could support her and he had been requesting to meet with her.

34.     When he did speak to the Director and to a Human Resources representative, Mr. Porter told them that he was being treated contrary to policy and procedure and differently than White employees.

35.     White employees have been treated very differently even in the face of documented, verified complaints of serious misconduct.

36. Female nurses and pharmacists complained about a White doctor trying to make them call him "daddy" in a sexually-suggestive manner, but Defendant did not punish the doctor and, in fact, gave him a reward.

37. The White onsite lead tech followed a transgender employee into the bathroom and harassed the employee, but Defendant did not punish the harasser.

38. Mr. Porter was going to reassign the responsibilities of the harasser of the transgender employee as part of a reorganization, but Defendant terminated Mr. Porter and has retained the White lead tech.

39. The actions of Defendant complained of herein were intentional, willful, deliberate, knowing, and malicious.

40. As a direct, foreseeable, and proximate result of Defendant's wrongful actions, Mr. Porter has suffered pecuniary losses in the form of lost wages as well as severe emotional distress, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses, all in an amount to be determined at trial.

## COUNT I

### RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT – DENIAL OF PAY RAISE

41. Mr. Porter realleges and incorporates herein the allegations contained in Paragraphs 1 – 40.

42. Defendant's actions alleged herein constitute discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

43. Mr. Porter's race was a motivating factor in Defendant's denial of a raise to which he was entitled based on his hire into a higher-level position.

6

44.     Defendant's actions on the basis of Mr. Porter's race were willful and knowingly committed.

45.     As a direct and proximate result of Defendant's adverse treatment of Mr. Porter in violation of Title VII of the Civil Rights Act of 1964, Mr. Porter was injured and suffered damages.

46.     Mr. Porter has sustained a loss of back pay, benefits, incidental expenses, and front pay.

47.     Defendant engaged in the discriminatory practices alleged in the first cause of action with malice and/or with reckless indifference to Mr. Porter's federally protected rights, making Defendant liable for compensatory and punitive damages pursuant to 42 U.S.C. §§ 1981a(a) & (b).

## COUNT II

### RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT – FAILURE TO PROMOTE

48.     Mr. Porter realleges and incorporates herein the allegations contained in Paragraphs 1 – 47.

49.     Defendant's actions alleged herein constitute discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

50.     Mr. Porter's race was a motivating factor in Defendant's decision to promote a less-qualified White employee to the Director position instead of Mr. Porter, who was the best-qualified candidate for the position.

51.     Defendant's actions on the basis of Mr. Porter's race were willful and knowingly committed.

52.     As a direct and proximate result of Defendant's adverse treatment of Mr. Porter in violation of Title VII of the Civil Rights Act of 1964, Mr. Porter was injured and suffered damages.

53.    Mr. Porter has sustained a loss of back pay, benefits, incidental expenses, and front pay.

54.    Defendant engaged in the discriminatory practices alleged in the second cause of action with malice and/or with reckless indifference to Mr. Porter's federally protected rights, making Defendant liable for compensatory and punitive damages pursuant to 42 U.S.C. §§ 1981a(a) & (b).

## COUNT III

**RACE DISCRIMINATION IN VIOLATION OF TITLE VII
OF THE CIVIL RIGHTS ACT – DISCIPLINE AND TERMINATION**

55.    Mr. Porter realleges and incorporates herein the allegations contained in Paragraphs 1 – 54.

56.    Defendant's actions alleged herein constitute discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

57.    Mr. Porter's race was a motivating factor in Defendant's decision to suspend him, write him up and remove essentially all functions of his job, and ultimately terminate him.

58.    Defendant's actions on the basis of Mr. Porter's race were willful and knowingly committed.

59.    As a direct and proximate result of Defendant's adverse treatment of Mr. Porter in violation of Title VII of the Civil Rights Act of 1964, Mr. Porter was injured and suffered damages.

60.    Mr. Porter has sustained a loss of back pay, benefits, incidental expenses, and front pay.

61.    Defendant engaged in the discriminatory practices alleged in the third cause of action with malice and/or with reckless indifference to Mr. Porter's federally protected rights,

8

making Defendant liable for compensatory and punitive damages pursuant to 42 U.S.C. §§ 1981a(a) & (b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays as follows:

1.      That Defendant be served and required to answer within the time prescribed by law;

2.      That a jury of eight try this cause;

3.      That, upon the trial of this matter, the Court award Plaintiff judgment for damages of the lost compensation he has suffered from the date of Defendant's illegal actions, in an amount to be proven at trial;

4.      That the Court issue an award of front pay in an amount to be proven at trial in lieu of reinstatement because the actions described herein and the circumstances surrounding the place of employment have made reinstatement impossible;

5.      That Defendant be ordered to pay punitive damages in an amount to be determined at trial;

6.      That Defendant That the Court award Plaintiff additional compensatory damages, including, but not limited to, damages for emotional distress, pain and suffering, embarrassment, and humiliation, in an amount to be proven at trial;

7.      That costs and attorney's fees be assessed against Defendant pursuant to 42 U.S.C. § 2000e-5(k);

8.      That costs and discretionary costs be taxed against Defendant;

9.      That Pre-Judgment and Post-Judgment interest be assessed against Defendant, as provided by law;

10.     That such other remedies as shall be necessary and proper to eliminate all violations complained of herein be awarded as provided by law; and

11.     For such other and further relief as the Court may find appropriate.

Respectfully submitted,

__/s D. Wes Sullenger_____
D. Wes Sullenger, IL ARDC # 6322019
                KY BAR # 91861
                TN BPR # 021714

Sullenger Law Office, PLLC
2508 Jackson Street
Paducah, KY  42003
Voice:  (270) 443-9401
Fax:     (270) 596-1082

wes@sullengerfirm.com

*Attorney for the Plaintiff,*
*Timothy Porter*